1       United States District Court for the Middle District of Tennessee

RECEIVED
in Clerk's Office

JUN 2 2 2021

U.S. District Court
Middle District of TN

2               801 Broadway Rm 800, Nashville, TN 37203

3

4       _____ Daniel James Silva _____

5               Plaintiff

6   13 management                    Case number:

7   Andrea Finley swift

8   Judge Eli J. Richardson

9   Judge William L. Campbell, Jr

10  Judge Joe Binkley

11  Neal and Harwell

12  ___ _____

13  Defendants

14

15                      RICO Complaint

1    <u>Addresses</u>

2    <u>D1 13 management,</u>

3    <u>718 Thompson Ln Ste 108256, Nashville, TN 37204</u>

4

5    <u>D2 Andrea Finley swift,</u>

6    <u>Twenty two zero one  Harding place</u>

7

8    <u>D3 Judge Eli J. Richardson,</u>

9    <u>801 Broadway, Nashville, TN 37203</u>              <u>my address 501 Lester lane , Winston Salem</u>

10                                                              <u>NC 27203</u>

11   <u>D4  Judge William L. Campbell, Jr,</u>

12   <u>801 Broadway, Nashville, TN 37203</u>

13

14   <u>D5  Judge Joe Binkley,</u>

15   <u>1 Public Square, Suite 509 Nashville, TN 37201 (address listed)</u>

16   <u>D6  Neal and Harwell,</u>

17   <u>1201 Demonbreun St Ste 1000, Nashville, TN 37203</u>

2

1                       Factual background

2    Taylor swift, James Douglas Baldridge, Venable LLC, neal and harwell,william T

3    ramsey,mariam n stockton , and mazianio s reliford are actively involved in a RICO

4    conspiracy involving fraudulent Trademarks trademarks (1989 sn: 86363039) and

5    (1989 sn: 86369161) because swifts name of her album is called (T.S. 1989)

6    sn:86369455 not (1989) they have actively been protecting  fraudulent

7    trademarks (1989 sn: 86363039) and  (1989 sn: 86369161).

8    the following cases have been against Taylor swift, her companies and her

9    lawyers for the following reasons (fraudulent trademarks) (1989 sn: 86363039)

10   and  (1989 sn: 86369161), for violating my 5th and 14th amendment rights of due

11   process and RICO violations stemming from the (wire fraud)18 U.S.C. 1343 by

12   swifts lawyers uploaded images and other filing  on pacer.gov for all my federal

13   cases more then 12 federal cases  and caselink for case 21c444 also sending me

14   copy's is acts of mail fraud 18 U.S.C. Section 1341.

15   there are many federal and state judges who are Taylor's swifts assessors after

16   the fact and have committed they own RICO violations using pacer.gov and

17   caselink to use the mail and internet to spread their fraud,

3

1     here's a list of the following state and federal judges who are RICO conspirators

2     and the cases they committed their acts,

3

4     *U.S. District Court  Northern District of Florida*

5     **4:19-cv-00286-RH-MJF SILVA v. SWIFT**

6     **ROBERT L HINKLE, presiding**

7     **MICHAEL J FRANK, referral**

8

9     **4:19-cv-00290-AW-CAS SILVA v. BALDRIDGE**

10     **ALLEN C WINSOR, presiding**

11     **CHARLES A STAMPELOS, referral**

12

13     **4:21-cv-00024-MW-MAF SILVA v. VENABLE LLP**

14     **MARK E WALKER, presiding**

15     **MARTIN A FITZPATRICK, referral**

16

1    **4:21-cv-00049-WS-MAF SILVA v. SWIFT**

2    **WILLIAM STAFFORD, presiding**

3    **MARTIN A FITZPATRICK, referral**

4

5    **4:21-cv-00095-MW-EMT SILVA v. HINKLE**

6    **MARK E WALKER, presiding**

7    **ELIZABETH M TIMOTHY, referral**

8

9    **4:21-cv-00134-AW-MAF SILVA v. ROSE**

10   **ALLEN C WINSOR, presiding**

11   **MARTIN A FITZPATRICK, referral.**

12

13

14

15

1    *the U.S. District Court for the Middle District of Florida,*

2

3    **3:17-cv-00292-HES-MCR Silva v. Swift**

4    **Harvey E. Schlesinger, presiding**

5    **Monte C. Richardson, referral**

6

7    **3:17-cv-00814-MMH-JRK Silva v. Swift**

8    **Marcia Morales Howard, presiding**

9    **James R. Klindt, referral**

10

11   **3:18-cv-00688-MMH-JRK Silva v. TAS Rights Management, LLC**

12   **Marcia Morales Howard, presiding**

13   **James R. Klindt, referral**

14

15

6

1    **3:19-cv-00354-TJC-MCR Silva v. Tas Rights Management LLC**

2    **Timothy J. Corrigan, presiding**

3    **Monte C. Richardson, referral**

4

5    **3:20-cv-01343-HES-PDB Silva v. Swift**

6    **Harvey E. Schlesinger, presiding**

7    **Patricia D. Barksdale, referral**

8

9    **6:19-cv-00384-RBD-T_S Silva v. Tas Rights Management LLC**

10    **Roy B. Dalton, Jr., presiding**

11    **T. B. Smith, referral.**

12

13

14

15

7

1 ***U.S. District Court Middle District of Tennessee***

2

3 **3:20-cv-00810 Silva v. Swift et al**

4 **Eli J. Richardson, presiding**

5

6 **3:20-cv-00938      Silva v. Mullen et al**

7 **William L. Campbell, Jr, presiding**

8

9 all judges listed violated my 5th and 14th amendment rights to due process and

10 have allowed fraudulent Trademarks (1989 sn: 86363039) and  (1989 sn:

11 86369161) because swifts name of her album is called (T.S. 1989)  to stay active,

12 those trademarks prevent me due to the trademark act of 1984 from selling shirts

13 that say 1989 on it the year of my birth without committing a 3rd degree felony.

14 the following state and federal judges are in a RICO conspiracy with musician

15 Taylor swift,

16

1. **Federal Judge  ROBERT L HINKLE**

2. **Federal Judge MICHAEL J FRANK**

3. **Federal Judge ALLEN C WINSOR**

4. **Federal Judge CHARLES A STAMPELOS**

5. **Federal Judge MARK E WALKER**

6. **Federal Judge MARTIN A FITZPATRICK**

7. **Federal Judge WILLIAM STAFFORD**

8. **Federal Judge ELIZABETH M TIMOTHY**

9. **Federal Judge Harvey E. Schlesinger**

10. **Federal Judge Monte C. Richardson**

11. **Federal Judge Marcia Morales Howard**

12. **Federal Judge James R. Klindt**

13. **Federal Judge Timothy J. Corrigan**

14. **Federal Judge Patricia D. Barksdale**

15. **Federal Judge Roy B. Dalton**

9

1   **Federal Judge T. B. Smith**

2   **Tennessee state Judge N Even harris**

3   **Tennessee state Judge Dianne Turner**

4   **Tennessee state Judge Joe Binkley JR**

5

6   In short not only are they 18 U.S. Code § 3 - Accessory after the fact but all

7   needed to use the United States federal mail service and pacer and or caselink/

8   efile to file their fraudulent orders committing multiple counts of mail and wire

9   fraud 18 U.S.C. Section 1341—Mail Fraud and 18 U.S. Code § 1343 - Fraud by

10  wire, radio, or television committing their own Rico violations in the process.

11

12  on 5/19/2020 I went to address Harding place to serve defendant Taylor Alison's

13  swift a summary judgment and to attempt an arrest on her for the following

14  crimes,

15  Multiple counts of Obstruction of justice 1505

16  Multiple Rico violations

17  Multiple counts of 18 U.S. Code § 241. Conspiracy against rights

10

1   And multiple other crimes along with her lawyer Doug Baldridge he orchestrated

2   her crimes,

3

4   I had gone to address  Harding place and when I got there I was met by 2 armed

5   guards but I did not attempt to beach the gate, I handed over a copy of the my

6   civil rights lawsuit for case  4:19-cv-00286-RH-MJF SILVA v. SWIFT et al. a certified

7   complaint and a singed affidavit explaining swifts crimes in detail, on the arresting

8   affidavit by officer Andrew Mullen which he stated (the defendant was trying to

9   serve federal rico violations paperwork to a resident) admitting he knew swift

10   lives at the house  and address, he later stated ( the defendant was there to serve

11   papers and to make a citizens arrest.  Officer MULLEN has blatantly admitted that

12   he not only knew why I was there but after understating why I was there,

13   feloniously obstructing my legitimate citizen's arrest also protecting SWIFT from

14   arrest in the process.

15   by officer Andrew Mullen placing me under arrest for 3rd degree trespass.

16   Mullen and the other 4 officers that where there committed the following civil

17   rights violations and broken the following criminal statues federal and state

18   committed by all named parities in the lawsuit,

11

1 **By Mullen arresting me after reading the verified civil rights complaint and**

2 **affidavit he committed,**

3

4 **1st obstruction of justice 1503** (multiple counts) being that lawsuit 4:19-cv-

5 00286-RH-MJF SILVA v. SWIFT et al was pending at the time,

6 **2nd 2010 Tennessee Code**

7 Title 39 - Criminal Offenses

8 Chapter 11 - General Provisions

9 Part 4 - Criminal Responsibility

10 39-11-411 - Accessory after the fact.

11

12 A person is an accessory after the fact who, after the commission of a felony, with

13 knowledge or reasonable ground to believe that the offender has committed

14 (a)    the felony, and with the intent to hinder the arrest, trial, conviction or

15 punishment of the offender:

16

12

**(1)  Harbors or conceals the offender.**

(2)  Provides or aids in providing the offender with any means of avoiding

arrest, trial, conviction or punishment; or

(3)  Warns the offender of impending apprehension or discovery.

(b)  This section shall have no application to an attorney providing legal services

as required or authorized by law.

(c)  Accessory after the fact is a Class E felony.

[Acts 1989, ch. 591, § 1; 1994, ch. 978, § 4; 1995, ch. 281, § 1.]

Also hes an 39-11-411. Accessory TO Mr.swifts FALSE POLICE REPORT

2010 Tennessee Code

Title 39 - Criminal Offenses

Chapter 16 - Offenses Against Administration of Government

Part 5 - Interference with Government Operations

39-16-502 - False reports.

.(a)  It is unlawful for any person to:

13

1

(1) Initiate a report or statement to a law enforcement officer concerning an

offense or incident within the officer's concern knowing that:

4

(A) The offense or incident reported did not occur.

6

(B) The person has no information relating to the offense or incident

reported; or

9

(C) The information relating to the offense reported is false; or

11

(2) Make a report or statement in response to a legitimate inquiry by a law

enforcement officer concerning a material fact about an offense or incident

within the officer's concern, knowing that the report or statement is false and

with the intent to obstruct or hinder the officer from:

(A) Preventing the offense or incident from occurring or continuing to occur; or

14

1    (B) Apprehending or locating another person suspected of committing an

2    offense;

3    (2) A violation of subdivision (a)(3) is a Class C felony. [Acts 1989, ch. 591, § 1;

4    1990, ch. 1030, § 28; 1998, ch. 690, § 1; 2000, ch. 976, § 1; 2002, ch. 849, § 6.]

5    Due to the fact that the other named defendants not only fall under

6    2010 Tennessee Code

7    Title 39 - Criminal Offenses

8    Chapter 16 - Offenses Against Administration of Government

9    Part 5 - Interference with Government Operations

10   39-16-502 - False reports. But also 39-11-411. Accessory after the fact, for swifts

11   rico violations and the civil rights violations perpetrate by the arresting officer

12   (Mullen) and his back up.

13   **Mullens arrest affidavit is fraudulent because the police report was fraudulent,**

14   **the report was made to obstruct my arrest. Being that mulleins affidavit is**

15   **fraudulent he and 4 others violated my 4th amendment right Mullen committed**

16   **2 counts of  obstruction of justice 1503 for each fraudulent mark  (1989 sn:**

**86363039) and (1989 sn: 86369161) equaling 1 count of RICO, caused by taylor**

**swifts and her father scott swifts and andrea swifts  fraudulent police report.**

## RICO Count 1

13 management is the company that deals with taylor swifts trademarks and

anything todo with ip, ive had many cases with them and it can be easily proven

that they committed multiple counts of RICO.

## RICO Count 2

Taylor swift gifted the house to her mother, I was arrested at were officer mullen

committed 2 counts of obstruction 1503, Andrea Finlay swift is an accessory to

Andrew mullen and her daughters and her daughters companies RICO violations.

At least conspiracy.

## RICO Count 3

I had a case with Judge Eli J. Richardson 3:20-cv-00810 Silva v. Swift et al

hes an accessory to Andrew mullens, taylor swifts and rico violations, He also

denied me my 5th and 14th amendment rights to due process by not giving me a

opportunity to be heard (fair hearing), In the process.

## RICO Count 4

Neal and Harwell is the laws firm on lawsuit 21c444 hired by 13 management and

JESSE P. SCHAUDIES, neal and Harwell accessory to Andrew mullens, taylor swifts

and Andrea Finley swifts rico violations also lawyer mozianio S Reliford sent me 4

letters on march 17th  April 6th  and April 13th  there is another letter but I lost it

(Reliford committed at least 4 counts of mail fraud fraud 18 U.S.C. Section 1341—

Mail Fraud) Reliford gets his own rico count.

## RICO Count 5

Judge joe Binkley violated my 5th and 14th amendment rights in civil case 21c444

by giving me less then 48 hours to make a hearing in Tennessee and also gave a

no contact order committing **3 counts of obstruction 1505 (had 3 pending cases**

**in Florida at the time at the federal level).**

4:21-cv-00095-MW-EMT SILVA v. HINKLE et al     closed 04/01/21

4:21-cv-00134-AW-MAF  SILVA v. ROSE et al     closed 04/01/21

4:21-cv-00024-MW-MAF SILVA v. VENABLE LLP et al closed 05/11/21

**2 of which I dismissed myself due to mental exhaustion.**


## RICO count 6

I had a case with  Judge William L. Campbell  3:20-cv-00938 Silva v. Mullen et al

hes an accessory to Andrew mullens, taylor swifts  rico violations, He also denied

me my 5th and 14th amendment rights to due process by not giving me a

opportunity to be heard  (fair hearing),  In the process.

**Memorandum of law to bring this lawsuit.**

 1. the Racketeer Influenced and Corrupt Organizations aCt (RICO), 18 U.S.C. '

1961-1968, which is Title IX of the Organized Crime Control Act of 1970 (OCCA),

imposes criminal and civil liability upon persons who engage in certain "prohibited

Activities," each of which is defined to include, as a necessary element, proof of a

"pattern of racketeering activity." ' 1962. "Racketeering activity" means "any act

or threat involving" specified state law crimes, any "act" indictable under

18

1  specified federal statutes, and certain federal "offenses." ' 1961(1). A "pattern"

2  requires "at least two acts of racketeering activity" within a 10-year period. '

3  19651(5).

4

5  Continuity of racketeering activity likewise may be demonstrated in a variety of

6  ways. Continuity is centrally a temporal concept, and may be either closed–or

7  open-ended. A party alleging a RICO violation may demonstrate continuity over a

8  closed period by proving a series of related predicates extending over a

9  substantial period of time.

10

11  (c) Neither RICO's language nor its legislative history supports a rule that a

12  defendant's racketeering activities form a pattern only if they are characteristic of

13  organized crime. No such restriction appears in RICO's test. Nor is there any

14  language suggesting that RICO's scope should be limited to acts of an association

15  rather than an individual acting alone.

16

17

18

19

1     A line of cases hold that any governmental agency, court, political office or the

2     like could serve as a RICO "enterprise." United States v. Thompson, 685 F.2d 993,

3     999 (6th Cir. 1982)(en banc) cert. denied, 459 U.S. 1072 (1983). Among the

4     government units that have been held to be "enterprises" are offices of governors

5     and state legislators, courts, court clerks' offices. See e.g., United States v.

6     Stratton, 649 F.2d 1066, 1072-75 (5th Cir. 1981); United States v. Clark, 656 F.2d

7     1259, 1261-67 (8th Cir. 1981) Office of county judge); United States v. Frumento,

8     405 F. Supp. 23, 29-30 (E.D. Pa. 1975), affd, 563 F.2d 1083 (3d Cir. 1977). cert,

9     debued, 434 U.S. 1072 (1978).

10

11     Decisions after Frumento expanded government activity to every conceivable

12     government agency, court, or political office. United States v. Thompson, 669 F.2d

13     1143 (6th Cir), revd 685 F.2d 993 (6th Cir. 1982)(en banc), cert. denied, 459 U.S.

14     1072 (1983)

15

16     ·    Each of these criminal acts were compounded by the fact that they were

17     perpetrated by people in positions of trust, who were paid to enforce the law.

18

1 ·     Expanding on the number of parties involved in the series of predicate acts

2 were the unknown-but suspected-U.S. Department of Justice-parties that were

3 orchestrating the multiple schemes and conspiracies and protecting each of the

4 criminal acts of each and every one.

5

6 Title 18 U.S.C. § 1962(a) provides:

7

8 Title 18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate

9 any of the provisions of subsections (a), (b), or (c) of this section."

10

11 In Beauford v. Helmsley,     S. Ct.     (1989), the Supreme Court held that it is

12 not necessary to prove that multiple schemes, episodes or transactions occurred

13 in order to establish a "pattern of racketeering activity," as long as the

14 racketeering acts were "neither isolated nor sporadic."

15

16 Mail and wire fraud were a part of the scheme, as defendants used the mails and

17 telephone to carry out their schemes. The mails were used in filing court papers,

21

1    used to notify plaintiff of these filings, More than two, actually dozens of

2    instances, of such mail and wire fraud occurred, in a pattern of racketeering

3    activity.

4    In H.J. Inc. v. Northwestern Bell Telephone Co. vs. U.S.    (June 26, 1989), the

5    court held:

6    The Racketeer Influenced and Corrupt Organizations aCt (RICO), 18 U.S.C. ' 1961-

7    1968, which is Title IX of the Organized Crime Control Act of 1970 (OCCA),

8    imposes criminal and civil liability upon persons who engage in certain "prohibited

9    Activities," each of which is defined to include, as a necessary element, proof of a

10    "pattern of racketeering activity." ' 1962. "Racketeering activity" means "any act

11    or threat involving" specified state law crimes, any "act" indictable under

12    specified federal statutes, and certain federal "offenses." ' 1961(1). A "pattern"

13    requires "at least two acts of racketeering activity" within a 10-year period. '

14    19651(5).

15

16    Continuity of racketeering activity likewise may be demonstrated in a variety of

17    ways. Continuity is centrally a temporal concept, and may be either closed–or

18    open-ended. A party alleging a RICO violation may demonstrate continuity over a

1   closed period by proving a series of related predicates extending over a

2   substantial period of time.

3

4   (c) Neither RICO's language nor its legislative history supports a rule that a

5   defendant's racketeering activities form a pattern only if they are characteristic of

6   organized crime. No such restriction appears in RICO's test. Nor is there any

7   language suggesting that RICO's scope should be limited to acts of an association

8   rather than an individual acting alone.

9

10      RICO Requires no more than a slight effect upon interstate commerce.

11   United States v. Doherty, 867 F.2d 47, 68 (1st Cir. 1989). United States v. Murphy,

12   768 F.2d 1518, 1531 (7th Cir. 1985). cert. denied, 106 S.Ct. 1188 (1986).

13

14   The racketeering activity is not required to benefit the enterprise. The

15   participants in the scheme are not required to have personally profited, though

16   some did.  United States v. Killip, 819 F.2d 1542, 1`549 (10th Cir. 1987.

17

1  Congress limited the force of Rule 8(b) by loosening the statutory requirements

2  for what constitutes joint criminal activities. United States v. Friedman, 854 F.2d

3  535, 561 (2d Cir. 1988); United States v. Castellano, 610 F.Supp. 1359, 1396

4  (S.D.N.Y. 1985). If a defendant is not named in a conspiracy or RICO count, he may

5  be charged in a separate court, in the same indictment, if he is alleged to have

6  participated in the same series of acts or transactions that constituted the

7  conspiracy or RICO offense.

8

9  **Civil Liability**

10   **Section 1964(c) of the RICO Act also allows civil claims against anyone accused**

11  **of a RICO violation. When a civil RICO claim is successfully established, the**

12  **injured person automatically receives a judgment of three times the amount of**

13  **their actual damages, plus legal fees**

14

15  **RICO employs broad definitions to sweep a wide variety of enterprise criminal**

16  **activity into its purview. One of the original goals of RICO was to eliminate**

17  **organized-crime families. However, because Congress could not legislate against**

18  **specific persons or families, it was forced to use broad language to define**

24

**racketeering and organized crime. The far-reaching language of the statute has**

**subjected a wide range of criminal defendants to RICO's penalties. The typical**

**RICO defendant is far from the stereotypical violent mobster. A RICO defendant**

**can be anyone who uses a business (including courts of law) in any way to**

**commit two or more of the many racketeering offenses.**

## Void judge's orders

1. A judge is an officer of the court, as well as are all attorneys. A state judge is a

state judicial officer,paid by the State to act impartially and lawfully. A federal

judge is a federal judicial officer, paid by thefederal government to act

impartially and lawfully. State and federal attorneys fall into the same general

category and must meet the same  requirements. A judge is not the court.

People v. Zajic, 88 Ill.App.3d 477,

2. "Fraud upon the court" occurs whenever any officer of the court commits

fraud before a tribunal.  A judge is not a court; he is under law an officer of the

25

**court, and he must not engage in any action to deceive thecourt. Trans Aero Inc.**

**v. LaFuerga Area Boliviana, 24 F.3d 457 (2nd Cir. 1994); Bulloch v. United States,**

763 F.2d 1115, 1121 (10th Cir. 1985) (fraud upon the court exists "where the

judge has not performed his duty).


**3**. **Whenever any officer of the court commits fraud during a proceeding in the**

**court, he/she isengaged in "fraud upon the court".   In Bulloch v. United States,**

**763 F.2d 1115, 1121 (10th Cir. 1985),**

the court stated "Fraud upon the court is fraud which is directed to the judicial

machinery itself and is not fraud between the parties or fraudulent documents,

false statements or perjury. ... It is where the court or a member is corrupted or

influenced or influence is attempted or where the judge hasnot performed his

judicial function --- thus where the impartial functions of the court have been

directly  corrupted.""Fraud upon the court" has been defined by the 7th Circuit

Court of Appeals to "embrace that species of fraud which does, or attempts to,

defile the court itself, or is a fraud perpetrated by officers of thecourt so that the

judicial machinery can not perform in the usual manner its impartial task of

adjudgingcases that are presented for adjudication." Kenner v. C.I.R., 387 F.3d 689

26

(1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon thecourt is not in essence a decision at all, and never becomes final."

**4.What effect does an act of "fraud upon the court" have upon the court proceeding?  "Fraud upon**

**the court" makes void the orders and judgments of that court. The U.S. Supreme Court has consistently held that a void  order is void at all times, does not have to be reversed or vacated by a judge, can not be made valid  by any judge, nor does it gain validity by the passage of time. The order is void ab initio.**

Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 41 S.Ct. 116 (1920).

**"Fraud destroys the validity of everything into which it enters**," Nudd v. Burrows (1875), 91 US 426, 23 Led 286,290; particularly when "a judge himself is a party to the fraud," Cone v. Harris (Okl. 1924), 230 P. 721, 723.  Windsor v. McVeigh (1876), 93 US 276, 23 Led 914, 918.

1

**5.**A judgment may not be rendered in violation of constitutional protections.

The validity of a judgment may be affected by a failure to give the constitutionally

required due process notice and an opportunity to be heard. Earle v. McVeigh, 91

US 503, 23 L Ed 398. See also Restatements, Judgments ' 4(b). Prather vLoyd, 86

Idaho 45, 382 P2d 910.

6. The limitations inherent in the requirements of due process and equal

protection of the law extend to judicial as well as political branches of

government, so that a

judgment may not be rendered in violation of those constitutional limitations and

guarantees. Hanson v Denckla, 357 US 235, 2 L Ed 2d 1283, 78 S Ct 1228.

28

1

2

### Specific relief requested.

**Injunctive relief,**

A1 **Set aside Judge William L. Campbells** void order in case 3:20-cv-00938 Silva

v. Mullen et al for committing Rico violations. Even if he did not commit Rico

violations (which he did), **I wasn't given due process. Making his order void, void**

**ab initio.**

**Monetary relief,**

For general damages I want 4 years of medium Tennessee income **from each**

**defendant** for **13 management committing rico violations over the past 4 years,**

**stating back 3:18-cv-00688-MMH-JRK Silva v. TAS Rights Management, LLC. Over**

**10 federal lawsuits ive had with due over 4 years. $56,084  4x   224,336 dollars.**

**Total amount 1,346,016 from all defendents in monetary damages.**

15

13 management     224,336 dollars

Andrea Finley swift  224,336 dollars

1  Judge Eli J. Richardson  224,336 dollars

2  Judge William L. Campbell, Jr 224,336 dollars

3  Judge Joe Binkley  224,336 dollars

4  Neal and Harwell  224,336 dollars

5

6  Punitive damages

7  13 management   89,000,000 million dollars

8  Andrea Finley swift 89,000,000 million dollars

9  Neal and Harwell   89,000,000 million dollars

10

11  **Memorandum for punitive damage's**

12  Because punitive damages are intended to punish the wrongdoer, a wealthy

13  wrongdoer should face a higher punitive damages award than a less wealthy

14  party. Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928, 148 CR 389 ("the function

15  of deterrence . . . will not be served if the wealth of the defendant allows him or

16  her to absorb the award with little or no discomfort"). Little v Stuyvesant Life Ins.

30

Co. (1977)67 CA3d 451, 469, 136 CR 653; see also Michelson v Hamada (1994)29

CA4th 1566, 1595, 36 CR2d 343. [a]lthough appellate courts have sometimes used

the terms "wealth," "financial condition" and "net worth" interchangeably

[citations], clearly these terms are not synonymous. And, while "net worth" is

probably the financial measurement most often used in setting the amount of

punitive damages, no court has held that it is the only permissible measurement.

See also Cheung v Daley (1995)35 CA4th 1673, 1677, 42 CR2d 164; Kizer v County

of San Mateo (1991) 53 C3d 139, 147, 279 CR 318. In Clark v McClurg (1932) 215 C

279, 9 P2d 505, however, an award of $5000 in punitive damages was upheld

when the jury left blank the space for actual damages.

In Cheung, defendant was accused of fraudulently transferring real property to

evade satisfaction of a nuisance judgment against him. The jury found that

plaintiff was entitled to compensatory damages in the amount of $0. The jury

further found that by making the fraudulent transfers, defendant had acted with

fraud, oppression, or malice, and awarded punitive damages. On appeal, the

court concluded that "the rule of Mother Cobb's Chicken -- that an award of

exemplary damages must be accompanied by an award of compensatory

damages—is still sound. That rule cannot be deemed satisfied where the jury has

31

1  made an express determination not to award compensatory damages." 35 CA4th

2  at 1677.

3  Michelson v Hamada (1994)29 CA4th 1566, 1593, 36 CR2d 343; Las Palmas

4  Assocs. v Las Palmas Center Assocs. (1991)235 CA3d 1220, 1243, 1 CR2d 301

5  ("punitive damages are not awarded for the purpose of rewarding the plaintiff,

6  but to punish the defendant"); Kaye v Mount La Jolla Homeowners Ass'n

7  (1988)204 CA3d 1476, 1493, 252 CR 67; Dyna-Med, Inc. v FEHC (1987) 43 C3d

8  1379, 1387, 341 CR 67 (punitive damages "serve but one purpose—to punish and

9  through punishment, to deter"); Castaic Clay Mfg. Co. v Dedes (1987)195 CA3d

10  444, 450, 240 CR 652; Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928 n13, 148

11  CR 389. Accordingly, punitive damages should not be greater than the amount

12  necessary to accomplish these goals. Weeks v Baker & McKenzie (1998)63 CA4th

13  1128, 1166, 74 CR2d 510; Michelson v Hamada (1994)29 CA4th 1566, 1593, 36

14  CR2d 343; Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928 n13, 148 CR 389 ("the

15  function of punitive damages is not served by an award which, in light of the

16  defendant's wealth and the gravity of the particular act, exceeds the level

17  necessary to properly punish and deter").

32

The deterrence justification for punitive damages is motivated by two objectives: (1) to deter the specific defendant in the case from repeating or continuing his, her, or its offensive behavior and (2) to deter, generally, other potential parties from committing similar offenses. See Restatement (Second) of Torts §908. This rationale of deterrence is especially strong in cases in which other measures of civil damages, and the unlikely prospect of criminal prosecution, are together insufficient to prevent an individual or entity from engaging in a wrongful act. Indeed, absent the fear of punitive damages, a defendant may have little incentive to discontinue the unlawful or harmful conduct.

determine the amount of punitive damages to award, the Book of Approved Jury Instructions (BAJI) states that the jury should consider:

(1) The reprehensibility of the conduct of the defendant.

(2) The amount of punitive damages which will have a deterrent effect on the defendant in the light of defendant's financial condition.

Even if plaintiff suffers only minimal damage, willful and intentional misconduct may be basis for award of punitive damages, In re Baker, 18 B.R. 243, 245 (Bankr. WDNY 1982).

1  Punitive damages may be awarded in a tort action arising from the parties

2  contractual relationship and other matters if the plaintiff demonstrates; (1) that

3  the defendant's conduct is actionable as independent tort; (2) the tortious

4  conduct is of an egregious nature; (3) the egregious conduct is directed toward

5  the plaintiff; (4) the defendant's conduct is part of a pattern directed at the public

6  generally, Conocophillips v. 261 E. Merrick Rd. Corp., 428 F.Supp.2d 111, 129

7  (EDNY 2006).

8  punitive damages should be reserved for cases where defendant acted with the

9  degree of malice akin to the mens rea required for most crimes, Jeffries v.

10  Harleston, 21 F.3d 1238, 1249, cert. granted, vacated on other grounds, 513 U.S.

11  996 (1994).

12  In federal cases, the factfinder may award punitive damages if the defendant's

13  conduct "was malicious, oppressive or in reckless disregard of the plaintiff's

14  rights, Generally, punitive damages can be awarded in an amount up to the

15  greater of $500,000.00 or three times the amount of compensatory damages.

16  Fla. Stat. 768.73(1)(a) However, the amount of punitive damages may be greater

17  upon proof that the conduct was motivated by unreasonable financial gain or

34

specific intent to harm. No cap in Florida if intent was on purpose for punitive damages.

Vicariously assessed punitive damages are insurable in Florida. U.S. Concrete Pipe Co., 437 So. 2d 1061. See also Highlands Ins. Co. v. McCutchen, 486 So. 2d 4 (Fla. Dist. Ct. App. 1986).

There is no maximum dollar amount of punitive damages that a defendant can be ordered to pay. In response to judges and juries which award high punitive damages verdicts, the Supreme Court carved out a notable exception to this rule of proportionality in the case of TXO Production Corp. v. Alliance Resources Corp., where it affirmed an award of $10 million in punitive damages, despite the compensatory damages being only $19,000, a punitive-to-compensatory ratio of more than 526.

**2014 Tennessee Code**

**Title 29 - Remedies and Special Proceedings**

**Chapter 39 - Compensation for Economic and Noneconomic Damages**

**§ 29-39-104 - Punitive damages.**

35

1 **Pro se case law,**

2 **1. Elmore v. McCammon (1986) 640 F. Supp. 905**

3 **"... the right to file a lawsuit pro se is one of the most important rights under**

4 **the constitution and laws."**

5 **2. Jenkins v. McKeithen, 395 U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co.,**

6 **151 Fed 2nd 240; Pucket v. Cox, 456 2nd 233 Pro se pleadings are to be**

7 **considered without regard to technicality; pro se litigants' pleadings are not to**

8 **be held to the same high standards of perfection as lawyers.**

9

10

11 **3. Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938)**

12 **"Pleadings are intended to serve as a means of arriving at fair and just**

13 **settlements of controversies between litigants. They should not raise barriers**

14 **which prevent the achievement of that end. Proper pleading is important, but**

15 **its importance consists in its effectiveness as a means to accomplish the end**

16 **of a just judgment."**

36

1    **4. Puckett v. Cox, 456 F. 2d 233 (1972) (6th Cir. USCA)**

2    **It was held that a pro se complaint requires a less stringent reading than one**

3    **drafted by a lawyer per Justice Black in Conley v. Gibson.**

4    Daniel James silva pro se 6/19/2021

5    

6    Celticmoon1989@yahoo.com

7    501 Lester lane Winston Salem nc 27103

8    **this court has approved my forma pauperis in case 3:20-cv-00938   Silva v.**

9    **Mullen et al William L. Campbell Jr, so this court has already declared me a**

10   **pauper and that was when I had a job I don't have one anymore.**

11                          **Further Rico violations**

12   **Tas management and their conspirators have recently committed rico violations**

13   **in this court Case No. 3:21-cv-00136 involving invaild copyright 1989, William L.**

14   **Campbell, Jr presided over a case Case No. 3:21-cv-00136 in  the very same court**

15   **he committed Rico violations in case 3:20-cv-00938 Silva v. Mullen et al. earlier**

16   **in the year.**

17

1

2       **Table of contents (exhibits)**

3 **Exhibit A - name of Taylor swifts album (T.S. 1989) (86369455)**

4 **Exhibit B – photo of swifts album**

5 **Exhibit C- Fraudulent trademark (1989) (sn: 86369161)**

6 **Exhibit D – Fraudilent trademark (1989) (sn:86363039)**

7 **Exhibit E – mail fraud from neal and Harwell 18 usc 1341**

8 **Exhibit F - mail fraud from neal and Harwell 18 usc 1341**

9 **Exhibit G - mail fraud from neal and Harwell 18 usc 1341**

10 **Exhibit H – arrest affidavit from officer Andrew mullen**

11 **Exhibit I – general affidavit**